HORACE SCOTT v. THE STATE.

No. 11505.   Delivered October 3, 1928.
Rehearing denied October 9, 1929.

The opinion states the case.

*Mike T. Lively* of Dallas, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Offense, aggravated assault; penalty, thirty days' imprisonment in the county jail.

Appellant has filed a motion for certiorari alleging that his Bill of Exception No. 15, appearing in the transcript as unapproved by the trial court, was in fact approved and filed by him, and asking that his record be perfected so as to show said bill of exception so approved. His motion is overruled for reasons that will appear in the opinion.

The appellant had been an employee of the Dallas News in its mailing department prior to May 1, 1927, and on the last mentioned date was discharged. About that same date prosecuting witness, Harry Eastus, began working for the News in its mailing department. After appellant's discharge many of his co-employees, who with him were members of the local mailer's union, went out on a strike. According to the testimony of Eastus, about June 10, 1927, and during the progress of said strike, five men, one of whom was appellant, attacked and assaulted him on a public street in Dallas while on the way to his work. Without detailing it, his testimony showed an unprovoked and brutal assault by appellant and others. The testimony of appellant and two of the alleged guilty parties was in substance that they attempted to talk to the witness about joining their union, and quitting his job, but were cursed and abused by witness, who attempted to pick up a rock, whereupon they attacked him in self-defense. The issue of premeditated assault, as well as self-defense, were submitted by the Court in his charge.

Neither side has favored this Court with a brief. The record is ponderous and complicated. If we comprehend it, the issues made by the record were correctly submitted by the Court. Regarding the sufficiency of the evidence, questioned by appellant, it seems entirely sufficient to support the verdict of the jury under our view of the record. The testimony of prosecuting witness regarding the assault was corroborated in most of its details by bystanders called as witnesses by the State. With reference to the issue of self-defense made by appellant and two of the parties jointly charged with him, we quote the following as part of their testimony:

Appellant Scott:

"We wanted to talk to him about not being a scab all his life. We said something like that to him. * * * If he wouldn't come out and join us and the way we expressed it as being a white man. * * * I think Mr. Gerth said something to him about being a white man. After someone hit him first, I hit him once. I hit him in the

face somewhere. I don't know how many times Gerth hit him or Norton. I was hitting him in the face. * * * The four of us were working towards the common goal and we were all hitting him at the last. * * * He was in the center and we were all ganged around him. I didn't see him hit any man there, but he would have, but he didn't that I know of. As to whether we had struck him all we wanted to, I had not. When we were through, we left him."

Gerth testified:

"After he got in the street and I jumped out in the street and ran into him and I let him go when he got to running across the street, and I told Scott, I said Scott, we better leave for the simple reason I could see he knows Scott and he knows Webb and he knows me."

Webb testified:

"I said that women came out and commenced hollering and we turned him loose. Mr. Norton was holding him. * * * Norton had his hands in Eastus' hips, had him from behind. I mean he was standing behind him, with his arms holding his hands against his hips that way. I think we all hit him. I slugged him right over here under the left eye. There wasn't over ten or fifteen licks hit. All of us hit him. One of us was holding him from behind. He had been hitting him too. Norton was standing over there just this way and every once in a while he would hit him that way and hold him there. * * * He never did holler for help but several times enough to hear it. * * * He sorter slipped out from under us and run."

While these witnesses testified repeatedly they attacked Eastus because and only when he was trying to pick up a rock, their testimony as a whole is such as to raise some doubt whether the issue of self-defense was in the case. This particularly in view of the rule in such cases that no more force can be used than reasonably appears necessary to repel a threatened assault. Forest v. State, 300 S. W. 53, and authorities there cited. If the testimony raised such issue, it likewise raised the issue of provoking the difficulty, upon which the Court did not charge. We mention these matters because of bills of exception presenting alleged errors of a somewhat trivial nature and which could not have affected the result of the trial in our opinion in the face of proof of guilt of such an impressive and convincing character as we find in the record, some of which came from the appellant and his co-defendants themselves.

It would have only tended to obscure the real issues for the Court to have turned aside and tried out the issue of the merits of the strike, the attitude of the Dallas News towards unions in general and this one in particular, or whether or not it rightfully discharged Scott. These were all collateral issues. One of the bills presenting such a collateral matter is No. 14. The substance of this is that the Court erred in refusing to permit appellant to testify that Mr. Dealey, President of A. H. Belo & Company, publishers of the Dallas News, had told appellant prior to the date of the alleged assault that he, Dealey, was going to discontinue the use of union labor in the mailing department of the Dallas News and that he Dealey, was going to have appellant fired. Appellant avers that this was "further material and pertinent in view of the fact that Tom Porter, a witness for the State, had testified in this cause that he had fired the appellant, Horace Scott, for being a drunkard and a bootlegger." It was shown that Porter was a Dallas News employee and appeared to have authority to hire and fire in the mailing department. Neither the Dallas News nor Mr. Dealey were parties to this prosecution, and Mr. Dealey's ex parte statements were hearsay and not binding upon the State. As to the Porter evidence, the trial court filed a substitute bill of exception declining to approve appellant's bill raising this matter. This substitute bill, which is binding upon this Court, shows that said Porter was not asked any questions by either the State or appellant but did testify without objection at the instance of one of the jurors trying the cause, as set out in the bill. Apparently appellant made no objections to such testimony and made no motion to strike same, but attempted thereafter to contradict and impeach same in the above manner.

Where the defendant on trial fails to object to immaterial and prejudicial testimony, he may be estopped to afterwards contradict it. He cannot thus make an issue of an immaterial matter which had no proper place in the trial. Stone v. State, 91 Tex. Crim. Rep. 313. Giebel v. State, 28 Tex. Crim. Rep. 151. The testimony elicited by the juror without objection by the appellant was immaterial and prejudicial and we cannot presume that the trial court would have refused to protect appellant's rights in this matter if he had been requested to do so. We are unable to agree with appellant that the bill as shown in the record presents any error.

Appellant by another bill presents the point that the Court erred in refusing to permit the introduction of a contract between A. H. Belo & Company and the local mailers' union. We are not able to

perceive what light this could throw upon the true issues in the case, namely as to whether or not a premeditated assault was made upon prosecuting witness or whether same was in self-defense.

Bill No. 15, asked to be correctly shown in the record in motion for certiorari, relates to an alleged conversation happening between an employee of the Dallas News and others. The bill nowhere shows whether the transaction happened before or after the alleged assault. If after, it could not be contended it was admissible. We cannot indulge the presumption that same occurred prior to the alleged assault. All presumptions are in favor of, not against, the correctness of the trial court's rulings. Some of the proffered testimony was obviously inadmissible and if it were all offered together, as seems indicated by the bill, the Court was correct in rejecting it. If some of this testimony was admissible, it should have been singled out and offered separate and apart from the inadmissible portion. Branch's P. C., Sec. 211. Nugent v. State, 101 Tex. Crim. Rep. 86. It would therefore appear to be useless to have such bill brought up in the record, as same presents no error in our opinion.

Bills Nos. 9 and 19 present alleged error in the action of the Court in admitting testimony of a threat made by appellant's co-defendant, Gerth, towards a co-worker of prosecuting witness in the mailing department of the Dallas News a very short time preceding the assault upon prosecuting witness. We think this testimony was admissible as showing an ill feeling towards a class of persons which embraced prosecuting witness. It tended to prove a motive for the alleged assault and was admissible likewise on the issue of premeditation. Miller v. State, 31 Tex. Crim. Rep. 636. Branch's P. C., p. 1167.

Many other bills of appellant have been disapproved and substitutes filed in their stead, which are entirely at variance with those of appellant, and being binding upon us and showing no error, they are all overruled.

By an affidavit filed appellant attempts to show that he has been deprived of his bills of exception, alleging in substance that his bills were held so long by the Court that it was impossible for him to get bystanders' bills and file them within the ninety days provided by law for filing transcripts. He further avers that if he had had the time and opportunity, he could have gotten bystanders' bills in full and complete substantiation of the bills presented by him to the trial court and which were refused and substitutes filed in lieu thereof by the trial judge, as before stated. Appellant seems to proceed upon

the ground that his appeal would have been dismissed by this Court if not filed within ninety days from adjournment of the court and that since it was impossible for him to file bystanders' bills within such ninety days due to the action of the Court in holding his bills, he has thus been deprived of a record. It is not a valid ground for dismissal of an appeal because the transcript was not seasonably filed, unless the failure to file same was due to the negligence of the appellant or his attorney or to some act of one or both of them. Edmondson v. State, 6 S. W. (2d) 119. This Court would not be justified in reversing this case on a mere statement from appellant's counsel as to what he could have procured. If appellant had in fact procured and filed or offered to file bystanders' bills after the Court declined to approve his original bills in the court below and presented such matter to this Court, he would then have such matter properly before us. As presented, no error is shown.

. The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—In this case and those of Webb v. State, No. 11503 and Gerth v. State, No. 11504, opinions this day handed down, the appellants have filed identical motions for rehearing. We have been at some pains to carefully review the entire records in the light of the motions and of the confused condition of the records resulting from failure on the part of the trial court to approve the bills of exception presented by the appellant in each instance, and the filing in lieu thereof substitute bills prepared by the trial court, both the original and substitute appearing in the record. We observe in each record eleven bills of exception which were filed by the clerk of the trial court and are copied in each of these transcripts, none of which have been approved by the trial court and none of which should have encumbered these records.

Appellant again insists that his motion for certiorari should have been granted and that refusal thereof was error for which the case should have been reversed. The object of the writ referred to was to compel the clerk of the trial court to correct the transcript so as that same would show that bill of exceptions No. 15, was in fact approved by the trial court. Our original opinion herein manifests

that we considered said bill and held that it showed no error. In such case it would seem idle to contend that a rehearing should be granted and a reversal ordered for failure to grant a certiorari, for granting of same would have been of no real benefit to the accused. If the writ had been granted it could only have brought up a transcript so corrected as to show that bill of exceptions No. 15 was approved. This would only have entitled appellant to have had said bill considered. It was considered. Of what avail then the writ?

However, appellant also urges that in passing upon said bill we erred in holding inadmissible the testimony therein set out which the averments show would have been given by Mr. La Place. Further examination of the bill and record confirms us in our conclusion. Appellant offered to prove by La Place what a doorkeeper of a room in the Adolphus hotel told him. The doorkeeper was not a witness nor in any way connected with this case. Nor is there anything in the record making admissible his statement. Again after setting out that La Place heard one Estes tell prosecuting witness Eastus in said room certain things, it is set out that La Place would further testify that "It would be agreed upon as the policy of the Dallas News to fire Horace Scott * * * and that by discharging Scott a strike would result, and that in order to break the strike it would be necessary to incite acts of violence on the part of the strikers," etc. There is neither coherence nor relevance in the quoted part of the rejected testimony of La Place. The trial court ruled on the matter as presented to him, and we pass on it as presented to us by the bill, and upon consideration thereof uphold the trial court in his rejection of said testimony.

It is further urged that we should have held erroneous the refusal of a special charge set out in bill of exceptions No. 18. We find that in the main charge the court told the jury they could convict of aggravated assault only upon their belief beyond a reasonable doubt that the assault was committed with premeditated design,—that is a design preconceived prior to the time of the assault. A special charge asked by appellant was given which told the jury that if they believed appellant with others sought Eastus for the purpose of talking with him, etc., and that appellant did not have in his mind prior to the assault any purpose or design of assaulting Eastus, * * * and that on a sudden impulse arising at the time appellant assaulted Eastus, or if they had a reasonable doubt concerning this, they should acquit of aggravated assault. This renders harmless the refusal of a similar charge set out in bill of exceptions No. 18. We find no error in the matters set out in substitute bill of exceptions

No. 17. This assault was in 1927, and was made, if at all, upon a non-union mailer working for the Dallas News, by appellant and two other union mailers who were on a strike. Bill No. 17 sets out the court's refusal to admit in evidence a three-year written contract between the Dallas News and the Mailers' Union dated 1919 and ending February 18, 1922. The reason suggested by appellant for offering this document was that Circulation Manager Estes of the Dallas News had testified for the State that there was no existing contract between the News and the Mailers' Union of which organization appellant and his codefendants were members. The court sustained the objection to the contract on the ground that the testimony was immaterial and irrelevant. We confess ourselves unable to see how such proof could have shed light on the issue as to whether such assault was with premeditation; and it certainly could have had no bearing on whether such assault was in self-defense. As a matter of ordinary reasoning it would appear that appellant and his codefendants would have greater cause for resentment at being discharged *when there was such contract* than otherwise.

It is always cause for regret when there is confusion and contention over bills of exception and other matters pertaining to the preservation of complaints of procedure. We have tried patiently and at some consumption of time to examine these rather voluminous records in the light of appellant's motion, but find ourselves constrained to adhere to the conclusions announced in the original opinion.

The motion for rehearing is overruled.

*Overruled.*