# Leon Howard v. The State.

No. 15069.   Delivered October 26, 1932.
Rehearing Denied January 4, 1933.
Reported in 55 S. W. (2d) 1048.

The opinion states the case.

*Upton & Upton, James Cornell,* and *R. G. Hughes,* all of San Angelo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, five years in the penitentiary.

From this record we learn that deceased Burch herein shot and killed Jess Howard, father of appellant, about August 29, 1931, at San Angelo, Texas. Appellant was then in Arizona. He came at once home, and on September 10th following shot and killed Burch who was sitting talking to Sharp. Appellant walked up, asked deceased if his name was Burch, and, upon getting an affirmative answer, he fired. Deceased, who was unarmed, fled, and appellant emptied his pistol at the fleeing man, who was struck by several bullets. No defense was offered on the trial except that appellant was agitated by passion. He said he hardly knew what he was doing at the time.

But two bills of exception appear, neither of which presents error. The first set up complaint that appellant was not allowed to tell what a third party had told him regarding the wife and daughter of deceased, a matter wholly foreign to any issue in this case. The other complains of the court's action in sustaining the states motion to strike from the record certain statements of the mother of appellant made by her on the hearing of the motion for new trial. We see nothing in the statements referred to which, if considered, could reflect on the fairness or impartiality of juror Jones, for which purpose alone same could have been admitted. There is nothing in this record supporting the proposition that juror Jones was unfair or prejudiced, or that he refused to answer any questions asked him on his voir dire, or that he then made false or misleading answers to any question asked. He stated that he knew appellant and his deceased father, but did not know deceased Burch. He was not asked if he knew the mother of appellant.

Appellant set up in his motion for new trial that there existed enmity and ill-feeling against his mother on the part of juror Jones—but he nowhere avers that such feeling, if it existed, embraced himself, or that by reason thereof Jones was prejudiced against appellant, and we observe that the facts heard by the court when the motion for new trial was presented seem not to support either proposition. The only testimony

offered by appellant even remotely suggesting any animosity or prejudice on the part of Jones toward appellant was that appellant's mother had washed for Mrs. Jones some two years before this homicide, and that a misunderstanding then arose between the two women over some cheap article of clothing which was not returned with the laundry. Appellant had nothing to do with the matter and knew nothing of it apparently. Touching the matter, Mr. Jones testified on the hearing of the motion for new trial that he never had any trouble with Mrs. Howard over the washing; that he knew his wife did have some trouble, but this was women's matters which did not affect him. He further testified that he told his wife at the time it occurred that it was a closed incident and to have no words over it. We might observe, in line with our conclusion that the record fails to disclose that Jones was unfair, etc., that, when the jury retired, they unanimously voted that appellant was guilty, and on the first vote on penalty one man voted for twenty-five years, another for two years, while Jones and nine others voted for five years, this being the verdict of the jury. We find nothing showing that Jones exhibited malice, ill will or prejudice against appellant while in the jury room. Nine jurors, including Jones, voted against suspending appellant's sentence from the first. Two of the jurors who were for suspension of sentence (Meers and Cox), were the only jurors offered on the hearing of the motion for new trial by appellant, and neither of them detailed any statement of Jones, or act of his, which showed animus on his part toward appellant. Jones and two other jurors were introduced by the state. All five of the jurors introduced upon the hearing of the motion for new trial voted at the beginning for a penalty of five years, and did not change.

Another ground for new trial advanced by appellant was that after retirement the jury received other testimony hurtful to him, but, as we read the statement of facts heard on the motion for new trial, same seems to consist of testimony that some one, not Jones, said in the jury room that Burch had sons, the size and ages of which were not mentioned, and further that Jones in the jury room said that at a time some two years before this killing, Mrs. Howard, the mother of appellant, did the family washing for his (Jones') family. Whether this was used or intended as of weight for or against appellant or the connection in which it was said is not made to appear. Mr. Meers, witness for appellant, testified as follows: "The statements made by Mr. Jones that Mrs. Howard, the mother of the de-

fendant, had washed for his wife was while the jury was deliberating on the whole case."

Juror Cox merely said it was before the jury had arrived at a final verdict. Juror Rollins said he did not know what they were discussing when he heard Mr. Jones say that Mrs. Howard worked as hard as the rest of the family; that she took in washing, and had washed for his wife. Rollins further said that he did not hear Jones say anything derogatory of Mrs. Howard or the family. Juror Howell said he did not remember what was up for discussion when reference was made to the fact that appellant's mother took in washing. He did not know until he got in the jury room that appellant's mother bought groceries from Jones and paid for same in washing.

Such matters, to call upon this court to reverse the judgment therefor, should be such as that reason and common sense can see that same were harmful to the accused, and we do not think the showing here sufficient.

We have here a case in which nine men voted for a penalty of five years when the lowest punishment might have been two. The entire jury then came to the penalty voted for by the nine men. Also nine men then voted against suspending sentence. The entire jury came to an agreement on this view. Now, on the ground that in the jury room some one said that deceased had sons, and that one of the jurors who voted for five years and also voted against suspending the sentence, at some time in the jury room said that the mother of the accused had washed for his family to pay a grocery bill, we are asked to hold these of probable or possible injury to the accused and to reverse the case. To the writer it occurs that knowledge of the poverty of the family, of the willingness of the mother thereof to do manual labor to help, would go far to induce grant of suspended sentence in order that the son, the accused in this case, might render aid, if indeed such be in fact a consideration allowable under the supposed purpose and intent of the suspended sentence law. In other words, it appears to the writer that the statement made by Mr. Jones in the jury room would have more weight in favor of the accused than against him. That deceased had sons, their ages unknown, seems a matter of no moment. The general discussion had in the jury room, which was gone into extensively upon the hearing of the motion for new trial, was apparently a matter of right for the indulgence of the jury and discloses no wrong.

Finding no error in the record, the judgment will be affirmed.                                                         *Affirmed.*

ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In bill of exception No. 1 the following appears in substance: On cross-examination by state's counsel, appellant said: "I heard that my father was talking to Mr. Clendenen, and hadn't seen him for a long time; that he went down to see Bill and sitting in a car and Mr. Burch said to him, 'Jess Howard, you can't talk like that in front of my women folks.'"

On redirect examination the appellant was asked by his counsel the following question: "Please state what, if anything, Mr. John DeSpain, Special Investigator for the District Attorney's Office, told you shortly prior to the homicide with which you stand charged, concerning, or with reference to the character and general reputation of Mrs. Burch and daughter, Katherine Burch?"

Objection was urged by the state upon the ground that the testimony was not relevant, but was immaterial and related to a collateral matter. The court declined to hear testimony which, according to the bill, would have been as follows: "John DeSpain, Special Investigator for the District Attorney's Office, told me a few days before I killed Mr. Burch that both Mrs. Burch, the wife of B. F. Burch, and Katherine Burch, the daughter of Mrs. Burch, were common prostitutes. He further told me that B. F. Burch solicited for both his wife and daughter and that he drummed up Negro and Mexican trade for each of them."

We confess our inability to perceive the relevancy of the excluded testimony. Neither is the relevancy of the testimony shown by the bill to have been adduced by the state apparent. If the alleged conversation with DeSpain was relevant to any issue in the case, the introduction of the subject by the state would have entitled the appellant to introduce the remainder of the conversation upon the same subject. Such is the declaration of article 728, C. C. P., 1925.

In article 1257a, P. C., 1925, it is said:

"In all prosecutions for felonious homicide the State or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the homicide, which may be considered by the jury in determining the punishment to be assessed."

The materiality of the purported declaration of Clendenen

in the presence of the appellant, namely, "Jess Howard, you can't talk like that in front of my women folks," purported to have been uttered by Burch shortly before he killed the appellant's father is open to serious question. Manifestly, its relevancy does not appear from the bill of exception under discussion. The state having improperly introduced the testimony without any objection upon the part of the appellant, he would be in no position to complain that he was not permitted to make the improper evidence a predicate for introducing additional evidence of the same character.

In subdivision 9 of the syllabus in the case of Giebel v. State, 28 Texas App., 151, 12 S. W., 591, it is said: "No rule of evidence will admit irrelevant, immaterial, and incompetent defensive testimony over the State's objection, because without objection, by the defense the State was permitted to elicit irrelevant and immaterial testimony."

The principle is also affirmed in the case of Scott v. State, 113 Texas Crim. Rep., 265, 20 S. W. (2d) 426. See, also, Stone v. State, 91 Texas Crim. Rep., 313, 239 S. W., 209; Burrier v. State, 112 Texas Crim. Rep., 137, 15 S. W. (2d) 642. A different rule would prevail if the improper testimony had come into the case against the objection of the accused. See Branch's Ann. Tex. P. C., p. 61.

The remarks hereinabove made are regarded as disposing of the legal questions raised in bill of exception No. 1. Looking to the statement of facts, however, we are impressed with the view that no injury was done to the appellant by the ruling of the court of which complaint is made in the bill. It seems evident from the statement of facts that the appellant, learning that his father had been killed by Burch, formed the design to kill him. We learned from the appellant's testimony that he was nineteen years of age; that, after an absence of two years, he came to his home in response to a telegram that his father had been injured, and upon his arrival learned that Burch was the slayer of his father. Burch was in jail at the time, charged with the homicide. Appellant owned a pistol. Upon learning from his mother the details of the death of his father on Friday, he took his pistol from his suitcase and put it in the Drillers Club, which was owned by his father and another, where it remained until the following Thursday. Appellant, learning that Burch had been released from jail, went to the Drillers Club and got his pistol, and upon seeing Burch, fired the shots which killed him.

There is no suggestion in the record that the reputation of

the family of the deceased for virtue and chastity was a matter of moment or that the appellant was actuated by any motive other than the fact that his father had been slain by Burch. It may be stated, however, that the view expressed by the appellant in his brief that, by virtue of the terms of article 1257a, P. C., the testimony in regard to the appellant's information relating to the reputation of the members of the deceased's family for virtue and chastity is not regarded as sound. The article mentioned does not extend the rules of evidence touching the admissibility of facts bearing upon the state of mind of the accused in a case of homicide, but such testimony is governed by the rules of evidence in operation before the enactment of the provisions of the statute mentioned. This has been declared in several cases. See Mercer v. State, 111 Texas Crim. Rep., 657, 13 S. W. (2d) 689; Russell v. State, 119 Texas Crim. Rep., 469, 45 S. W. (2d) 622.

Bill of exception No. 2 reflects the complaint of the action of the trial judge in refusing to consider certain testimony which was offered by the appellant upon the hearing of the motion for new trial. The evidence in question was that of the mother of the appellant relating certain conversations and transactions which she had had with Jones and his wife. The proffered testimony was in substance that two years before the trial, the wife of Jones accused the witness of failing to return an article which was among the clothing washed by the witness for Mrs. Jones, and that some hard feeling grew out of the controversy. The evidence of the witness was heard by the judge, and, when considered in the light of the other testimony given on the motion for new trial, the court's conclusion that Jones was not a prejudiced juror is deemed correct.

The motion for new trial embraces several matters, including the contention of the appellant that the testimony of certain jurors revealed misconduct of the jury demanding a new trial. Such alleged statements of juror Jones during the deliberation of the jury are relied upon. It appears from the record that the jurors, on their first ballot, were unanimous in their conclusion of the guilt of the appellant. Three members of the jury, however, favored a suspended sentence. The others, as understood, with one exception, perhaps, favored a penalty of confinement in the penitentiary for five years. The principal complaint relates to the alleged statements of juror Jones. His testimony, heard upon the hearing of the motion, was in substance as follows:

"I made the statement to the jury that I knew Mrs. Jess

Howard and knew she was honest because she bought groceries from me and owed me a grocery bill and that she did our washing, to pay the bill and I knew that she was honest. I said that in the presence of the jury.

\*  \*  \*  \*  \*  \*

"The occasion of my making that statement was that we were talking about the honesty of the boy and whether we thought it would be all right to give him a sentence and whether it would cause him to be harder when he came out than when he went in; they were discussing that. There was testimony that the boy sent his mother money, and I told the jury that she had bought groceries from me and washed to pay for the groceries. I told the jury that Mrs. Howard had washed for me after this testimony had been introduced that he had sent her money to support her."

The whole contention, as understood, revolves around the alleged fact that juror Jones had disclosed in the jury room, during the deliberation of the jury, that at one time he had sold groceries to the Howard family and that Mrs. Howard had paid the bill by washing clothes for the wife of Jones. It is claimed that Jones had stated to the jury that there was ill feeling existing between Mrs. Howard and Mrs. Jones, wife of the juror. There was some discussion in the jury room as to whether the appellant had contributed to the support of his mother and sister. Jones' testimony was to the effect that there was no difference at any time between him and Mrs. Howard, and that he made no statement to the jury that there was any ill feeling between Mrs. Howard and Mrs. Jones. The other matter mentioned relates to the discussion by the jury as to whether the appellant contributed to the support of his mother. There was a slight conflict in the evidence given on the motion for new trial. That of Jones, if believed, exculpates him from any of the alleged misconduct. The appellant's own testimony was to the effect that he had sent money to his mother during his absence, and this was not controverted, either in the jury room or on the trial, so far as we are able to ascertain. However, taking the testimony of the juror relied upon by the appellant and disregarding that relied upon by the state, it is thought that, in overruling the motion for new trial, the trial court was not in error. The matters relied upon as misconduct of the jury are not regarded as coming within the provisions of the law upon the subject which are set out in article 753, C. C. P., 1925. As stated above, the court was fully warranted in holding ·under the evidence that Jones was not prejudiced, and the

discussion in the jury room is probably classified as being within the principle stated by this court in the case of Jack v. State, 20 Texas App., 656, in which there is recognized as legitimate the practice of jurors debating upon matters properly bearing upon the trial and engaging in argument in their endeavor to solve any conflict of views that may be entertained by the individuals composing the jury. See Hallmark v. State, 89 Texas Crim. Rep., 257; Todd v. State, 93 Texas Crim. Rep., 553, see page 567; Vandorff v. State, 116 Texas Crim. Rep., 448; Straley v. State, 106 Texas Crim. Rep., 130. See, also, numerous cases cited in Shepard's Tex. Citations, August, 1932, p. 70; also 20 A. L. R., p. 1190, note.

The motion for rehearing is overruled.

*Overruled.*