ROBERT L. COLLIER V. STATE

No. 28,419. November 14, 1956.
Appellant's Motion for Rehearing Overruled
January 9, 1957.

*Fisher, Reavley & Barber,* Jasper, *Carey Williamson,* Silsbee, and *Thos H. Dent,* Galveston [on rehearing] for appellant.

*Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The conviction is for rape; the punishment, five years.

Appellant, age 23, commonly called Pete Collier, lived with his cousin John Jones. Jones' wife left for California on Friday afternoon to join her husband. She arranged for the children, including a 14-year-old daughter John Evelyn, to stay with their aunt, Lillian Riley, in her home, and left appellant in possession of the Jones residence.

About 2:30 A.M. on December 3; 1955, Helen Horn, who lived next door to the Jones home, heard a noise that "sounded as if somebody was fighting." She had seen John Evelyn at the Jones home the day before and knew that her parents were away and that appellant was occupying the home.

Helen Horn went to the Jones home and called John Evelyn.

She heard a female voice that she took to be that of John Evelyn, but did not understand what she was saying.

A man's voice, which she took to be appellant's, answered her second call and said that John Evelyn was not there.

Helen Horn then went to the house of Lillian Riley and asked her to investigate and she did.

Being unable to get in at the front door, Lillian Riley went to the back. Appellant opened the back door and admitted Lillian, and Helen Horn later went in.

Appellant was in his underwear and was drunk, and the house was dark.

The 14-year-old girl was lying in bed and was vomiting. She was either asleep or unconscious.

The cover was pulled off the girl and it was found that there was much blood on her and on the bed and cover.

The girl was taken to the McGrath Clinic by Lillian Riley, acompanied by appellant who was there arrested for drunkenness.

Pauline Pace, a nurse at the clinic, testified that the girl was brought to the clinic about 4 A.M.; that her aunt (Lillian Riley) asked her "who did this to you?" and the girl replied "Pete Collier did it."

Lillian Riley testified that the girl was not conscious from the time she found her until after this visit to the clinic and that she did not ask her any question and did not hear any statement from her.

Later in the morning the girl was examined at the clinic by Doctor J. J. McGrath who testified for the state, and whose qualifications to testify as a medical expert were admitted. Dr. McGarth testified that the girl was brought to him and he made the examination for the purpose of determining whether or not she had been raped; that her external female organs were covered with clotted blood; that his examination made after the girl had been cleaned up and the clotted blood removed, disclosed that there were some lacerations in the posterior wall of the en-

trance to the vagina, one perhaps an inch long, and two others; that blood was oozing from the lacerations.

Based upon his examination of the girl, Dr. McGrath expressed the opinion that the girl had been raped.

On cross-examination Dr. McGrath admitted that the lacerations in the mucus membrane lining of the girl's vagina could have been caused by the introduction of a coca cola bottle, a broom handle or any cylinderical object big enough to cause a stretching "but that wasn't the most likely thing to cause it."

The doctor testified it was not medically true that an intact hymen or maiden-head indicates that there has been no sexual intercourse and explained that the girl's hymen was not of a character to have prohibited intercourse without rupture, but would admit "anything as big as my two fingers without tearing at that particular time."

Appellant testified that he arrived at the Jones house, where he lived, about 2 A.M., and brought with him a gallon of wine, which he made available to the girl. He denied molesting the girl in any way but admitted that he was drunk or "half drunk and asleep" when the neighbor and the girl's aunt came to investigate.

The girl's testimony was to the effect that she was "pretty well passed out" after drinking the wine and that appellant did not do anything to her, "not as I knows of."

The court submitted the case to the jury as one of circumstantial evidence and we find the evidence sufficient to sustain the verdict.

Appellant does not challenge the sufficiency of the circumstantial evidence to sustain the conviction but in connection with his sole ground for reversal points to the failure of the girl to testify that appellant committed the offense.

Bed sheets taken from the room in which the girl was found were offered in evidence and were taken to the jury room while the jurors were deliberating.

One of the jurors, upon examination of the bed sheets, concluded that yellow stains thereon not previously found, pointed

out or identified, were caused by discharge from a male sexual organ.

The juror had a right to examine the exhibits and to determine for himself what the exhibit was and what if any weight it should be given.

The statement of this juror that the stains were in fact so caused is advanced as ground for new trial because of the receipt of additional testimony by the jury during their deliberations.

The record shows that it was after the other eleven jurors had voted guilty that the Juror Harrison examined the exhibits in the jury room and identified the stains found thereon as being the discharge from the male organ.

The statement of the Juror Harrison was not made until all of the other jurors had decided that appellant was guilty, and the minimum punishment was assessed.

If the statement made at that time can be considered as additional testimony, a point we need not decide, no injury to appellant is shown.

A juror's statement during the jury's deliberation, to require reversal, should be such that reason and common sense can see it was harmful to the accused. Howard v. State, 122 Texas Cr. Rep. 371, 55 S.W. 2d 1048.

We confess our inability to see how the statement of the juror, of his conclusion formed from examining the exhibits in the case, could have then influenced the other jurors who were then and remained convinced of appellant's guilt.

There being no possible harm or prejudice to appellant, the trial court did not err in overruling the motion for new trial.

The judgment is affirmed.

DAVIDSON, Judge, dissenting.

Here is a real "Believe It or Not" (with due apology to Ripley) !

The two principals in this case—and the only persons, that

is: the prosecutrix and the appellant, who knew whether the appellant was guilty of the offense charged—each testified that the alleged act did not happen and that appellant did not commit the crime of rape upon the prosecutrix.

So, we have here a case where the jury, the trial court, and a majority of this court, all of whom know nothing of the facts, say that the state proved that the prosecutrix was not only raped by someone but by the appellant—all in the face of the testimony of the prosecutrix that rape did not occur.

Does the presumption of innocence and reasonable doubt (Art. 9, P.C.) still exist in this state? The holding of my brethren, here, shows that it does not.

Now let us see what the facts are, as revealed by this record.

The prosecutrix, upon whom the state alleged the appellant "did make an assault" and whom he did "ravish and have carnal knowledge of," was a female of the age of fourteen years and nine months when the offense was alleged to have been committed. Lacking only a month of being fifteen years of age at the time she testified, prosecutrix was called as a witness by the state. There is nothing about her testimony to indicate, nor does this record otherwise suggest, that she did not possess normal intellect and intelligence.

The date of the alleged rape was fixed as the night of December 3, 1955. The place where the act was purported to have occurred was a room in the house in which the witness was staying. Appellant resided at the house.

Upon direct examination the witness testified that about 12:30 o'clock at night appellant came home and that she got up and opened the door. I quote from her testimony:

("Q. Did he come in your room?) A. No, sir; he kept to his room.

("Q. Did you ever talk with him?) A. No, sir.

("Q. Did he have any wine, or anything?) A. Yes, sir.

(Q. Did you drink some wine?) A. Yes, sir.

("Q. How much did you drink?) A. ·I drank two glasses and a half.

("Q. Two glasses and a half?)· A. Yes, sir.

("Q. Then what did you do?) A. Got in the bed and went to sleep.

("Q. You did what?) A. Got in the bed and went to sleep.

("Q. Then did Robert Collier, Pete Collier, ever come in your room?) A. No, sir.

("Q. You tell the jury he didn't come in there? Is that what your testimony is?) A. Yes, sir.

("Q. Do you recall ever being in the Hospital?) A. Sir?

("Q. Do you recall ever being at the Hospital here in Jasper?) A. No, sir.

("Q. That morning?) A. That morning around eight, I did.

("Q. You went to a Hospital in Jasper, didn't you?) A. Yes, sir.

("Q. Is that all you are going to tell the jury about this matter?) A. That is all I know to tell them."

Upon cross-examination by appellant, the witness testified:

("Q. John Evelyn, do you have any complaint against Robert Collier?) A. No, sir.

("Q. Did he do anything to you?) A. Not as I knows of.

("Q. John Evelyn, what was the relation between you and Robert Collier? You have known him for a long time, haven't you?) A. Yes, sir.

("Q. How did you regard him?) A. Sir?

("Q. How did you regard him? Was he like a brother or * * * ) A. Yes, sir.

("Q. What did he think of you? How did he regard you and treat you?) A. He treated me like I was a sister of his.

("Q. Would Robert Collier do anything like that to you?) A. I don't think he would.

("Q. Are you afraid to stay in the same house with him?) A. No, sir."

Further, in reference to her conditon the next morning, the witness testified as follows:

("Q. Were you sore, John Evelyn?) A. No sir.

("Q. Were you sore around your privates?) A. No, sir.

("Q. Were you hurting?) A. No, sir.

("Q. Were you affected any way from your private parts other than your menstruation?) A. No, sir.

("Q. Other than the normal blood flow you weren't sick?) A. No, sir.

("Q. Did any soreness develop any other time?) No, sir.

("Q. Do you know of any scratches or any injuries around your private parts?) A. No, sir.

("Q. Have you been able to find any?) A. No, sir.

("Q. Have you tried to find any?) A. Yes, sir.

("Q. And as far as you can tell, you haven't found any?) A. No, sir.

("Q. John Evelyn, why did you go to bed with your clothes on?) A. He had promised to take me swimming at Pineland, but it was late when he got back."

In the face of that testimony by the prosecutrix and the positive denial of guilt by the appellant, this court affirms this conviction.

The state sought to defeat the testimony of the prosecutrix by circumstantial evidence consisting of the tesitmony of a doc-

tor who examined her the next morning, as also the condition of her underclothes and the bedclothes.

The doctor who made the examination testified as to the physical condition of prosecutrix, as follows:

"So, I had my nurse and the girl's aunt, Lillie, to clean her up, remove the clotted blood. When that was done, I went in to make an examination of her. And the examination disclosed that there were some lacerations in the posterior wall of the entrance to the vagina. There was one laceration perhaps an inch long. There were two others; one on either side of it that were shorter in extent. Blood was oozing from the larger one and to a lesser extent from one of the smaller lacerations. *There was no evidence — no evidence that I could determine that there had been any laceration of any intact hymen — the hymen was patent, and, according to my examination, did not show any recent lacerations, or tears about it;* but it would admit my two fingers with difficulty and without any particular tearing."

Notwithstanding such testimony, the following question was propounded to the doctor:

"From your examination of the girl and the effects you have related to the jury of your findings, assuming that in a rape case that the law defines penetration or entrance of a male organ to be—the slightest amount of entrance of the male organ into the female organ—need not hav*ing* been completed; assuming that to be the state of the definition of the necessity of proof of penetration to establish the crime of rape, from your examination of her, tell the jury whether or not this girl had been raped? * * * Doctor, do you understand the question? Assuming those facts which I have asked you, and the assumption of the law concerning the necessary elements of penetration, and based upon your findings, tell the jury whether or not this girl had been raped?"

The witness's answer was, *"It was my opinion that she had been raped."*

Just why appellant's counsel did not object to the expression of this opinion and the legal conclusion by the doctor upon the very question the jury were to determine, the record does not disclose. The fact nevertheless remains that the failure to object could not render such opinion and legal conclusion on the part of the doctor proof of appellant's guilt.

So, in its final analysis, then, we have the state, by circumstantial evidence, here attempting to overcome the positive declarations and testimony of the injured female. The circumstances relied upon amounted to nothing more than suppositions, insinuations, and what-might-have-been.

There are, however, other and equally cogent reasons why the evidence is not sufficient to support the conviction. I have reference to what is known as the best evidence rule. Under that rule, the best evidence of which the nature of the case admits must be adduced. Inferior proof is not admissible until it is shown that the best evidence is unattainable. 18 Texas Jur., Evidence, Sec. 232, p. 365; 11 Texas Digest, Criminal Law, Key 398, p 462.

Under that rule it has been the consistent holding of this court in theft cases that secondary or circumstantial evidence cannot be utilized to prove want of consent to the taking of the property until it has been shown that the testimony of the owner is unavailable. White v. State, 156 Texas Cr. Rep. 408, 242 S.W. 2d 889, and authorities cited under Note 36 of Art. 1410, Vernon's P.C.

If it be necessary to prove want of consent to the taking of the property by the owner thereof when he testifies as a witness in the case, how much more so would it be necesary to require proof by the prosecutrix in a rape case when she testified as a witness in the case to the commission by the accused of the constituent elements necessary to constitute that offense, especially the act of penetration.

After all, whether with or without consent, rape is an offense in the nature of an assault because it is consummated by an unlawful act upon the person of another.

In such cases the assaulted person knows what happened to her and if she fails to testify to such fact, circumstantial evidence ought not to be permitted to say for her that which she did not say—and in this case, refused to say.

What a fertile field for fraud my brethren have here laid down by their opinion in this case!

There is another reason why this conviction ought not to be affirmed: and this is shown by the misconduct of the jury. All the evidence heard on the motion for new trial shows that

one of the jurors gave material testimony to and before the other jurors before a verdict had been reached. This testimony was to the effect that the stains on the bedsheets were discharges from a male sexual organ. No witness had so testified upon the trial of the case. By that testimony the juror was putting before the jury a fact damaging to appellant, and not offered upon the trial of the case.

My brethren hold that such statement on the part of the juror was not harmful to this appellant and that it did not influence the jury's verdict.

Subdivision 7 of Art. 753, C.C.P., says that a new trial "shall be granted" in a felony case "where the jury, after having retired to deliberate upon a case, have received other testimony."

Under that statutory mandate it has been the long and consistent holding of this court that a violation thereof requires a reversal of the conviction and that injury to the accused will not be presumed and that no speculation as to injury will be indulged. There are something like seventy cases cited under Note 142 of Art. 753, Vernon's C.C.P., which sustain the rule announced.

So here again I find my brethren overruling a long line of authorities without apparent reason other than that they have the power to do so.

My brethren cite the case of Howard v. State, 122 Texas Cr. Rep. 371, 55 S.W. 2d 1048, as sustaining their holding. That case is not in point. It did not involve a violation of the new-evidence provision of Subdivision 7 of Art. 753, C.C.P., but, to the contrary, was based upon Subdivision 8 of that article.

I respectfully enter my dissent.

#### ON MOTION FOR REHEARING

MORRISON, Presiding Judge.

Appellant takes us to task for holding that the conviction for rape can be sustained in the light of prosecutrix' testimony that the appellant did not do anything to her "not as I knows of."

Lillian Riley testified that the appellant came home between twelve and two o'clock that morning.

Prosecutrix testified that he came home about twelve thirty. She stated that it took about thirty minutes for her to drink the wine and that she then went to sleep.

Helen Horn testified that she heard the noise in the house about two thirty.

When the investigating party got in the house, the prosecutrix was unconscious from intoxication and was vomiting.

Accepting all of prosecutrix' testimony as true, it seems to logically follow from this chronology of events that the act of rape occurred after the prosecutrix had gone to her own bed and while she was unconscious from intoxication. The muffled female voice heard by Horn would not be at all inconsistent with the above explanation because prosecutrix could have resisted or participated in the act of sexual intercourse and made certain vocal noises while unconscious from intoxication and yet remember nothing of what transpired after she had regained consciousness.

As to the alleged jury misconduct, it should be borne in mind that whenever any article is introduced in evidence the jury certainly have a right to examine and discuss it. In Garza v. State, 156 Texas Cr. Rep. 557, 244 S.W. 2d 817, we had a case in which a pistol was introduced in evidence. The jury in that case clearly had the right to test the trigger pull and discuss it among themselves. Reversible error was reflected only because one of the jurors claimed to be an expert on firearms and told his fellow jurors certain facts not in evidence. In the case at bar, the juror in question laid no claim to possession of special knowledge not possessed by his fellow jurors. Any other rule than the above would unduly hamper discussion of evidence by members of the jury.

Remaining convinced that we properly disposed of this cause originally, appellant's motion for rehearing is overruled.