**Robert L. EVANS, Jr., Appellant,**

v.

**The STATE BAR OF TEXAS, Appellee.**

**No. 08–88–00178–CV.**

Court of Appeals of Texas,
El Paso.

Feb. 22, 1989.

Rehearing Denied March 22, 1989.

Judgment Reversed June 28, 1989.

Bill G. Alexander, Law Offices of Bill Alexander, Odessa, for appellant.

Steven D. Peterson, Gen. Counsel, State Bar of Texas, Linda Acevedo, Asst. Gen. Counsel, Austin, for appellee.

Before OSBORN, WOODARD and KOEHLER, JJ.

## OPINION

WOODARD, Justice.

This is an appeal from a judgment of disbarment. The judgment was entered on April 4, 1988, and was based upon a jury's finding that the Appellant violated the Code of Professional Responsibility. We reverse.

Evidence portrayed the following events. Fred Newman and Bill Humphris signed a letter of intent to jointly own a commercial water disposal well in Reeves County, Texas. It would firstly operate as a corporate entity under the name of Fred M. Newman, Inc. Upon payout from corporate income of initial and operating costs, the corporation was then to assign Humphris fifty percent of well and equipment. Humphris was to operate the well on a day to day basis.

Pursuant to that agreement, Fred M. Newman, Inc., entered into a surface lease of the proposed property with Robert and Mary Snodgrass. The lease provided for successive three year terms.

In 1981 and 1982, Fred Newman assigned varying percentages of Fred M. Newman, Inc.'s interest in the Snodgrass lease to various people and entities, including his father and children.

In June of 1983, Appellant suggested to Fred Newman that he create a new family corporation to be used as a holding company for Fred M. Newman and Fred M. Newman, Inc.'s assets. This corporation was named Freebird Oil Corporation, Inc., and the remainder of the interest in the Snodgrass lease was transferred to it.

Thereafter, in June of 1984, Humphris brought suit against Fred M. Newman, Fred M. Newman, Inc., and Freebird Oil for division of partnership assets and accounting. Appellant appeared on behalf of the defendants and also filed an intervention suit on behalf of Fred Newman's children and father. The accounting was resolved. Appellant told Fred Newman that if the judge ruled the enterprise to be a joint venture, it would be more difficult to dissolve. Newman was desirous of its continuation. Appellant further told Newman that Humphris had testified in trial that the Snodgrass lease had expired. Newman testified that Appellant told him that if the judge ruled the enterprise a joint venture or partnership, (he could not remember which one), the Snodgrass lease would be available for leasing with any new party. Appellant further explained that a fiduciary relationship existed between members of the enterprise, and if one leased it for himself, he leased it for the benefit of all while the enterprise existed. He further stated Humphris had testified he was in the process of seeking a new lease. Appellant stated it was possible that Exxon could lease the well. Under a sense of urgency, Fred Newman suggested that he negotiate a new lease pending the court's ruling on the entity nature of the enterprise. Appellant dissuaded him because of a possible appearance of a violation of a fiduciary relationship to the others in the enterprise.

On April 30, 1985, the case of *Humphris v. Newman, et al.* was tried, and in July of

that year, Appellant was notified by letter that the trial judge intended to hold the enterprise to be a joint venture. Thereafter, without the knowledge of the Newmans, Appellant made inquiry of Mr. Snodgrass as to the possibility of his leasing the property. He stated he no longer represented Fred Newman. On August 12, 1985, Appellant informed Fred Newman that he had received a proposed lease from Snodgrass. Under the impression that Appellant was acting as the representative of himself, his children and Freebird Oil, Fred Newman instructed the Appellant to take the lease on the terms offered and pay a $5,000.00 bonus to Snodgrass. On August 16, 1985, two days after rendition of judgment declaring the enterprise to be a joint venture, Appellant entered into a new lease with the Snodgrasses under the name of Robert L. Evans, Jr., P.C.

On August 23, 1985, Appellant filed suit against Humphris on behalf of Snodgrass. Among other things, he sought to enjoin Humphris from going on the property and interfering with operations of the new lessee (himself). On the same day, Humphris brought suit against the Appellant individually, and also sought a temporary injunction. Appellant answered this lawsuit with a claim of ownership of the Snodgrass leasehold interest and the equipment thereunder. At the hearing for Humphris' request for temporary injunction against the Appellant, Fred Newman discovered the Appellant was claiming the leasehold interests for himself. On September 4, 1985, Newman verbally discharged the Appellant. A new trial had been granted in the case of *Humphris v. Newman, et al.* On October 21, 1985, Appellant filed a third amended answer in that case on behalf of Fred M. Newman, Inc., and Freebird Oil Co., Inc. On October 24, 1985, in the *Snodgrass v. Humphris* case, a first amended cross petition was filed on behalf of Robert L. Evans, Jr., P.C., and Robert and Mary Snodgrass against Freebird Oil Company, Inc., the Newmans, Fred M. Newman, Inc., and the other original assignees of Fred Newman to the leasehold interest. The cross petition was filed by attorney, Ray P. Moudy. It sought a declaratory judgment

to decree ownership of the Snodgrass lease interest to the Appellant. In January of 1986, Appellant moved to withdraw as attorney of record in the *Humphris v. Newman, et al.* case. The Appellant testified to the contrary in many instances, but was disbelieved by the jury.

Disciplinary proceedings were brought against the Appellant. Trial was held, and the Appellant was found to have violated seventeen counts of professional misconduct under State Bar Rules.

■ Point of Error No. One predicates error in the voir dire examination of the jury panel. Counsel for the Appellee stated "[s]o in this case, the District 16–B Grievance Committee has determined and found acts of professional misconduct—." These were in the opening remarks to the jury panel, and the words were preceded by the following:

The Plaintiff in this action is the District 16–B Grievance Committee by the State Bar of Texas. Now, we have talked about the fact that the Supreme Court has promulgated rules for a lawyer's conduct by which lawyers' conduct is governed. Now, the State Bar of Texas is considered to be the administrative aura of the Supreme Court of Texas, and it is responsible for the enforcement of rules.

And, in particular, the grievance committee, the local grievance committee of the State Bar of Texas, are responsible for the investigation of complaints of attorney misconduct. They are to give notice to the accused attorney. They are to investigate whether they believe that acts of professional misconduct have occurred. If they believe that acts of professional misconduct have occurred, then they are to authorize the filing of a disciplinary lawsuit.

Now, in Texas, no lawyer can be disciplined except by his consent, except by a trial before a district court. So in this case, the District 16–B Grievance Committee has determined and found acts of professional misconduct—

Counsel for the Defendant objected to the Petitioner telling the jury what the grievance committee had found and moved for a mistrial. The motion was taken under advisement, and, subsequently, the Appellee explained to the jury:

> The issues of fact will be ultimately decided by this jury, and the law will be submitted to you by the Court. And your principal function in this case, ... will be to decide the issues of fact and decide what you believe about the case, what you believe about the issues, who you believe is telling the truth.

> . . . . .

> And it will be your function to decide both the creditability of the witnesses and the weight which you believe should be given to their testimony.

Except for the fact that this case is quasi-criminal in nature as its outcome concerns penalty, it is not unlike the disclosure of the award of or the refusal thereof by the Industrial Accident Board in the trial before the jury of a worker's compensation case. Although it is error, we must look to the emphasization for harm. *Texas Employers' Ins. Ass'n v. Brown*, 226 S.W.2d 233 (Tex.Civ.App.—Amarillo 1949, writ ref'd n.r.e.). In the case before us, the information was brought out as a matter of explaining jurisdiction. No specific findings were stated. The explanation of the Appellee accentuated the jury's independent fact finding responsibility. This error standing by itself was harmless.

 Point of Error No. Two assigns error to the admission into evidence over the objection of the Appellant of the following:

> ATTORNEY FOR THE STATE BAR:
> Mrs. Brownson, my question to you was, was it a matter of habit and custom for Mr. Evans to charge the work that he—to charge for more hours of work than he had done?
> ANSWER OF WITNESS:
> Yes, it was.

Appellant objected on the grounds it allowed specific acts of misconduct to impeach the character of the Appellant and was impeachment on a collateral matter.

Appellee contends that was invited by the attorney for the Appellant previously asking the same witness the following:

> Q. During the period of time that you have known Mr. Newman and Mr. Evans, can you tell the ladies and gentlemen whether or not Mr. Newman has ever commented to you about Mr. Evans' integrity?
> A. Yes, when I worked for Mr. Newman, he said many times that Mr. Evans had too much integrity to be a lawyer.

Tex.R.Civ.Evid. 404(a) generally prohibits the use of character evidence to prove conforming conduct. An exception is when it is offered by a party accused of conduct involving moral turpitude. Texas has historically had a narrow interpretation of this rule. Supporting evidence of good character, either for truth and veracity or honesty and fair dealing, should only be admitted in those cases where the nature of the action directly involves the character of a party, where a witness has been impeached, or where a party by his pleading or evidence charges his adversary with the commission of a crime involving moral turpitude. Character evidence is not admissible where merely fraud was charged. *Grant v. Pendley*, 39 S.W.2d 596, 599 (Tex.Comm'n. App.1931), *Waggoman v. Fort Worth Well Machinery & Supply Co.*, 124 Tex. 325, 76 S.W.2d 1005 (Tex.1934). The failure to adhere to the requirements of the Code of Professional Responsibility alleged in this case does not directly involve the character of the Appellant within the meaning of the law.

 Did the Appellant inject his good character in evidence? Did this "open the door" to evidence of specific acts of misconduct by the Appellee? What Mr. Newman stated to the testifying witness was subject to objection. It was hearsay without any exception. Even if it were character evidence offered for the truth of the matter as the Appellee contends, it would be inadmissible. As a general rule, the mere fact of the introduction of improper evidence by one party, *at least if given without objection ...*, does not justify the introduction

of similar evidence by such other party. [Emphasis added]. 29 Am.Jur.2d 316, sec. 267. 1 Wigmore, Evidence, sec. 15 at 736 (Tilles rev. 1983), places Texas within the jurisdictions that follow this principle of law, and cites *Johnson v. State*, 91 Tex. Crim. 582, 241 S.W. 484 (1922) and *Howard v. State*, 122 Tex.Crim. 371, 55 S.W.2d 1048 (1932). This rule was pronounced in *Shiner v. Abbie*, 77 Tex. 1, 13 S.W. 613 (1890), and followed in subsequently reported cases until the reporting of *Krider v. Hempftling*, 137 S.W.2d 83 (Tex.Civ.App.— Galveston 1940), which was frequently cited following its publication. The language in that case was, "it is held that where one party introduces evidence in regard to an irrelevant matter the other party may not only inquire of the witnesses concerning it but he is entitled to introduce evidence otherwise inadmissible in rebuttal thereof. 17 Tex.Jur. page 370." There was no mention whether the party who offered "invited evidence" initially objected to the "opening" evidence when offered. However, page 370 of Tex.Jur. referred the reader on the subject to page 349, which states "[t]he fact that improper evidence has been admitted *without objection* furnishes no reason for the admission of similar evidence over objection, and does not authorize the other party to introduce further similar evidence, nor to introduce, over objection, other improper evidence in rebuttal." [Emphasis added]. Cases that came after *Krider v. Hempftling*, sometimes mentioned the initial objection was made and some did not. It may not have been in issue or it may have been an oversight. Nevertheless, we can find no case which expressly overrules the requirement. Appellee made no objection to the hearsay evidence.

In addition, any "door opening" or "invited evidence" must be restricted to the same subject matter, i.e., whether Mr. Newman did or did not state that the Appellant had too much integrity to be a lawyer, not whether Appellant was a man of integrity. The witness was not asked to testify to the Appellant's good character and did not do so.

Furthermore, the action being quasi-criminal in nature, the spirit of the traditional Texas rule, "that an accused is entitled to be tried on the accusation made in the State's pleading and not on some collateral crime, or for being a criminal generally," *Young v. State*, 159 Tex.Crim. 164, 261 S.W.2d 836 (1953), must weigh. We believe the trial court abused its discretion in that any probative value of the evidence was substantially outweighed by the danger of unfair prejudice. Tex.R.Civ.Evid. 403. Unfair prejudice means the tendency of the evidence to persuade a jury to determine the issues on an improper basis such as emotion or bias. *United States v. Medina*, 755 F.2d 1269 (7th Cir.1985). For all the foregoing reasons, Point of Error No. Two is sustained.

In determining whether there has been reversible error, we may consider the cumulative effect of the errors occurring in the case. *Scott v. McLennan County*, 306 S.W.2d 943 (Tex.Civ.App.—Waco 1957, writ ref'd n.r.e.). While Point of Error No. One by itself would not be reversible, the associative effect of Point of Error No. Two would render it so. Point of Error No. One is also sustained.

Judgment of the trial court is reversed and the cause is remanded for a new trial.

### OPINION ON MOTION FOR REHEARING

Appellee's Motion for Rehearing reurges that Appellant's Point of Error No. Two should be overruled as the evidence admitted was invited. In further support of this contention, additional evidence which was not referred to in its pre-submission brief is now cited. Tex.R.App.P. 74(f)(1) requires the facts that are pertinent to a point of error are to be stated, with reference to the pages in the record where the same may be found in an appellate brief. Failure to do this constitutes waiver of their consideration. *Inpetco, Inc. v. Texas American Bank/Houston N.A.*, 722 S.W.2d 721 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

Appellee also contends that Appellant's Point of Error No. One was improperly

cumulated with Point of Error No. Two, and the combined effect does not establish that the admission of those matters was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case.

> Why is there always a secret singing
> When a lawyer cashes in?
> Why does a hearse horse snicker
> Hauling a lawyer away?

Carl Sandburg, *The Lawyers Know Too Much.* Lawyers, as a group, have endured public disfavor throughout the ages. They have been the paladins of unpopular causes and the vanguards of life and liberty. The misunderstanding of the lawyer's purpose and means by the masses, the aggressive nature of the advocate, and the fact that members of the bar often profit from mankind's miseries, produce distrust, begrudgerey and disaffection. And they have had their share of sinners. This prevailing undercurrent of prejudice always stands ready to subvert the fairness of a trial. Because of this, the Appellee should refrain from overreach.

The introduction into evidence of systematic overbilling of clients by the Appellant, compounded by the proclamation that The State Bar of Texas had already verified the culpable conduct of the Appellant, would so jeopardize the credibility of the Appellant, that it was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case. It is not required that the record demonstrate that "but for" the erroneous action, a different judgment would have necessarily have resulted. *American Surety Company v. Semmons,* 413 S.W.2d 732 (Tex.Civ.App.—Tyler 1967, writ ref'd n.r.e.).

■ Appellant additionally asserts that this Court's reference to the cause being quasi criminal is in conflict with this Court's decision in *The State Bar of Texas v. Sutherland,* 766 S.W.2d 340 (Tex.App.—El Paso 1989). Ballentine's Law Dictionary 1190 (3d ed. 1969), defines quasi crime as "an act not of a nature making it a subject of criminal prosecution but for which a forfeiture or penalty may be im-

posed." Disciplinary actions are civil in nature, and there is no conflict. Even though they are civil in nature and concern only conduct violative of the ethical standards of the profession, the possibility of the penalty of forfeiture of a law license is present. This carries the limited consideration of quasi crime expressed in our original opinion.

Appellee's motion for rehearing is overruled.