J. W. Burrier v. The State.

No. 12166.   Delivered March 20, 1929.

The opinion states the case.

Name signed to appellant's brief not legible.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, Judge.—Offense, murder; penalty, five years in the penitentiary.

The deceased, J. V. McDaniel, operated a filling station on the Wichita Falls and Archer City highway in Archer County.   In an attempted robbery of his place of business he was shot to death on May 5, 1927.   Appellant was identified as the man who did the shooting.

The case presents some rather unusual aspects.   Appellant was a farmer living near the town of Loraine in Mitchell County, Texas. He is shown to have a wife and several children and to have borne a good reputation in the communities in which he had lived during

his lifetime. By an imposing array of witnesses whose trustworthiness is not apparently open to question, he showed that he was in and about Loraine on the day of the homicide, which placed him so far from Archer County as to make it impossible for him to have committed the crime charged against him. On the other hand his identification by witnesses who testified they saw him on the occasion of the killing is positive. Thus the issue of his presence at the scene of the crime was a hotly contested one. The killing was cold blooded and without any extenuating circumstance but the jury only gave appellant five years. · This furnishes a background for the only bill of exception which we deem necessary to discuss.

Appellant while a witness on the stand was asked by the State whether or not he was not in company with a man by the name of Gee at Lake Wichita on the evening of May 4, 1927, and at that time and place asked Gee if he knew where they could get any whisky and also whether or not he told Gee at that time and place if he would get some whisky he, appellant, would pay for it and that they would get some girls and go out on the Lake and have a good time. Appellant denied this and Gee was placed on the witness stand and testified that such was a fact. We note also that the statement of facts shows he testified further that appellant at that time cursed and swore, repeating his language. Proper objection was made to said questions propounded to appellant and to proof of the facts testified to by the witness Gee regarding the whisky and woman episode. The question presented by Bill of Exception No. 7 regarding this matter is a frequently recurring one in this Court, and the admission in evidence of such testimony has been so ofttimes condemned that we content ourselves here with briefly quoting from some of the authorities:

In Wilson v. State, 1 S. W. (2d) 305, we said:

"If the State could legally prove that scarlet women occupied the hotel of appellant and that whisky was sold therein, common justice would demand that appellant be permitted to meet such evidence with proof of its falsity if he could and desired. With the issue thus joined, a collateral trial would be held, and the minds of the jurors would be turned from the real question to be decided, the result of which could in no wise help in the solution of the disputed and real issue in the case, namely, as to whether or not appellant was present and participated in the bank robbery. Moreover, such issues could be multiplied as witnesses for the state and

appellant took the stand to the point where a court trial would become a mockery and the administration of justice a farce."

We quote from Paragraph 150, Underhill's Criminal Evidence (Third Edition) :

"The rule which requires that all evidence which is introduced shall be relevant to the guilt or innocence of the accused is applied with considerable strictness in criminal proceedings. The wisdom and justness of this, at least from the defendant's standpoint, are self-evident * * * . To guard against this evil, and at the same time to avoid the delay which would be incident to an indefinite multiplication of issues, the general rule (to which, however, some very important exceptions may be noted) forbids the introduction of evidence which will show, or tend to show, that the accused has committed any crime wholly independent of that offense for which he is on trial."

Mr. Branch states the rule as follows:

"Proof of mere accusations against, or evidence of particular acts of misconduct, is not admissible to affect the credibility of a witness. Defendant or any other witness can only be impeached as to other offenses by showing that he has been legally charged with a felony or with a misdemeanor imputing moral turpitude." Branch's P. C., Sec. 168, citing a long list of authorities.

We said in Popejoy v. State, 10 S. W. (2d) 93 :

"Ordinarily the answer of a witness as to such matters is conclusive, and cannot be made an issue by proof of the truth of the matters inquired about. Though the history of a witness may generally be shown, as a rule proof of mere accusations that have not eventuated in an indictment for a felony or misdemeanor involving moral turpitude are excluded."

See also Chester v. State, 300 S. W. 57; Allen v. State, 278 S. W. 202; Castle v. State, 245 S. W. 917; Whiteside v. State, 12 S. W. (2d) 220; Price v. State, 65 S. W. 909.

The Court apparently admitted this upon the theory that it rebutted the evidence of appellant's wife, who testified that he was a church member and did not curse or swear. The fact that the appellant may have been permitted to introduce improper testimony does not authorize the State to do likewise. Smith v. State, 52 Tex. Crim. Rep. 27; Zimmer v. State, 64 Tex. Crim. Rep. 117; Johnson v. State, 17 Tex. Crim. App. 573. Admitting that the appellant's testimony was inadmissible, which we do not pass upon, the State's remedy was to object to same or have it stricken. This does not authorize the

State to depart from the legitimate issues of the case and prove facts the only effect of which was to prejudice the rights of appellant.

Because of this error the judgment of the trial court is reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.