## PHILLIP SCANLIN V. STATE

No. 29,056. June 26, 1957.
Appellant's Motion for Rehearing Overruled
(Without Written Opinion) October 16, 1957.

*Joseph A. Calamia* and *Daniel Y. Garbern*, El Paso, for appellant.

*Leon Douglas*, State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is misdemeanor embezzlement; the punishment, six months in jail.

Appellant's confession, omitting the formal parts, is as follows:

"My name is Phillip Scanlin, and I am 26 years of age; I was born in Carthage, N. Y., and at present consider the following address my home, 328 Upson #3, El Paso, Texas.

"I started to work for White Auto on September 8, 1956, as credit manager and assumed full responsibiilty as credit manager on September 15, 1956. On September 15th, 1956, I took $20.00 from an account of Marcos Ybarra. This payment was made in cash by Mrs. Ybarra. I wrote the woman a receipt and did not enter it on her account. This occured about eight other times and the amount taken was approximately $180.00. About

two or three of these were check accounts which came over the counter. I cannot remember what accounts these were or the date on which they occured. To my knowledge I did not take any of the checks which were received from the mail."

Hortensia Ybarra testified that she carried $20.00 in cash to the White Auto Store in El Paso on September 15, paid it to her mother's account and was given the receipt which was introduced in evidence.

Her mother testified that she sent the money by her daughter but that she later received a notice of delinquency from White's store and went to the manager to complain.

Manager Porter, appellant's superior with the White company, testified that he was familiar with appellant's handwriting and that the Ybarra receipt introduced in evidence bore his signature and that the payment reflected by the receipt had not been posted to the credit of the Ybarra account.

The appellant, testifying in his own behalf, admitted receiving the $20.00 and issuing the Ybarra receipt but stated that he placed the money with the duplicate receipt in a basket which was maintained in the office for that purpose and that he had not seen the money since.

He stated that he signed the confession because the officers who were interrogating him following his arrest had promised that he would not be prosecuted and because Mr. Porter, who visited him in the interrogation room at the police headquarters, told him that he had had a similar experience before and that the employee had been permitted to pay back the money and was not prosecuted and that possibly some deal could be worked out with the bonding company in the appellant's case, but that it was necessary for him to sign a confession before such could be done.

The officers who interrogated the appellant and took his confession denied that they had promised the appellant immunity from prosecution, and Mr. Porter stated that during his entire conversation with the appellant at the police station he had advised him not to make a confession unless it was the truth and had not told him that it was necessary for him to sign a confession for any reason. He admitted that he had told the appellant of his prior experience in which an employee had not

been prosecuted but denied that he made any promises to the appellant in this case.

At the conclusion of the case, there was no uncontradicted evidence in the record which would render the confession inadmissible as a matter of law. McHenry v. State, 163 Texas Cr. Rep. 436, 293 S.W. 2d 773. The jury, under an appropriate charge, found against the appellant on the issue of the voluntary nature of his confession.

There was considerable evidence adduced concerning the bookkeeping system employed at White's, where each customer had an account book similar to a bank book and which, in a measure, supported the appellant's theory that someone else in the office might have misappropriated the $20.00 in question.

Bill of Exception No. 1 complains of the overruling of the appellant's objection to the following question propounded to him on cross-examination.

"Q. Now you had this girl you went with in Juarez. Isn't it true that you were in Juarez practically every night during your employment?"

Appellant relies upon Wilson v. State, 108 Texas Cr. Rep. 397, 1 S.W. 2d 305, Burrier v. State, 112 Texas Cr. Rep. 137, 15 S.W. 2d 642, and Sample v. State, 158 Texas Cr. Rep. 200, 254 S.W. 2d 401, and contends that the asking of the question tended to show that he was a person of immoral character and inadmissible as a specific act of misconduct. The cases upon which the appellant relies relate to the offenses of murder and robbery and do not involve the crime of embezzlement. In Beard v. State, 140 Texas Cr. Rep. 127, 143 S.W. 2d 967, where the accused was charged with the misapplication of public funds, this court held proper proof that the accused had owned three automobiles during his relatively short term of office as evidence that he was extravagant beyond what his legitimate salary would justify. The same rules of relevancy would naturally apply to an embezzlement case.

Bill of Exception No. 2 relates to argument. In answer to the question set forth in Bill of Exception No. 1, the appellant testified that he went to Juarez as often as every other night, where he bought his gasoline and drank beer, as it was cheaper in Mexico. The argument was: "The defendant had been going to Juarez, drinking and carousing and spending his money." The

grounds of the objection were the same as those presented in the last bill. As stated, we have concluded that in a case of this nature the state was authorized to show, if they could, that the accused was spending money in excess of his normal income. Such evidence being admissible, the argument complained of became proper since it was a logical deduction from the appellant's testimony.

Bill of Exception No. 3 relates to the admission into evidence of the testimony of appellant's co-employee, Lupe Castaneda, concerning a telephone conversation which she had with a customer. Clearly, what the customer told Lupe was not admissible because it was hearsay, but we must determine if the court's error in his ruling calls for a reversal of this conviction. The customer told Lupe that she had sent in her payment but had not received credit therefor; Lupe informed the customer that she didn't know anything about it but would turn it over to the appellant, who took the telephone and, after he had hung up, said that if the customer had sent in the money, then it should be there (at the White store). So, then, the only objectionable portion of the above was that presumably another customer had reported a shortage in her account similar to the Ybarra account. Elsewhere in the record, we find that Mr. Porter, when being questioned as to whether any reports had been made to him concerning failure to credit accounts, testified without objection as follows: "At approximately the same time Mrs. Ybarra came in why one of the office girls had told me that it had been reported to Mr. Scanlin (the appellant) that payments were not being posted, on their account books, but the account books were being mailed back to them." It has long been the rule that the admission of improper evidence does not constitute reversible error if the same facts were proved by evidence which was not objected to. 4 Texas Juris., sec. 414, p. 537, and Moseley v. State, 158 Texas Cr. Rep. 578, 258 S.W. 2d 331.

Bill of Exception No. 4 complains that, while cross-examining the appellant concerning the confession, the prosecutor started at the beginning of the confession and asked the appellant, sentence by sentence, if it was true. When he reached a sentence which the appellant said was false, the prosecutor remarked, "Oh, now we are coming to the false part." Whether this be a question or a side bar remark, we would not be inclined to hold the same to be reversible error. In Watson v. State, 111 Texas Cr. Rep. 636, 13 S.W. 2d 696, relied upon by the appellant, the prosecutor asked the witness if he had heard of a specific act of misconduct on the part of the accused, and, when

the witness replied in the negative, the prosecutor said, *"Well I had heard about it* and thought maybe you had." The prosecutor in the case at bar did not add anything to the evidence which was already before the jury as he did in the Watson case, and such case is not authority here.

Bill of Exception No. 5 complains of a colloquy between counsel, in the absence of the jury, after one of them had said before the jury had retired that he did not remember any such testimony and the other had replied that he did.

We find no error presented by the bill.

Finding the facts sufficient to support the conviction and no reversible error appearing, the judgment of the trial court is affirmed.