

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00285-CR

———————————————

JAMES LEMONS, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court No. 1791143

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

A grand jury charged Appellant James Lemons with two counts of engaging in organized criminal activity, one count of aggravated robbery with a deadly weapon, one count of aggravated assault with a deadly weapon, and one count of unlawful possession of a firearm. *See* Tex. Penal Code Ann. §§ 22.02(a)(2), 29.03(a)(2), 46.04(a), 71.02(a)(1). A petit jury acquitted Lemons on the two engaging-in-organized-criminal-activity counts but convicted him on the other three counts and assessed his punishment at 15 years' confinement for the aggravated robbery count and two years' confinement for each of the other counts. Lemons has appealed his convictions and sentences and briefed three points for our review. We affirm.

### Background

Lemons does not challenge the evidentiary sufficiency supporting his convictions, and the specific facts of the offense have little to nothing to do with his appellate issues. It suffices to say that Lemons was implicated in a robbery and that police were able to identify him and another gunman in part by their clothing. Multiple different clothing articles and photographs of other clothing articles were admitted at Lemons's trial. A police officer assigned to the Gang Intelligence Unit testified that Lemons was an Agg Land Crip, a member of the Crips criminal street gang.

### Arguments

Lemons's first two points concern matters that occurred after the jury was first sent back to deliberate. His remaining point complains of the absence of any judgment

2

in the record reflecting his acquittals. We will overrule Lemons's first two points because they lack merit and dismiss his remaining point because we lack jurisdiction to address it. To aid in our analysis, we will address his first two points in reverse order.

## I. Mistrial

In Lemons's second point, he argues that the trial court erred when it denied his motion for mistrial based on juror misconduct. Hours into the jury's deliberations, one of the jurors[1] notified the trial court that another member of the jury[2] openly admitted that she had family members in a gang and was a part of Lemons's community. The trial court had previously given the jury a yellow card with a set of preliminary instructions, including the following:

> . . . [D]o not tell other jurors your own personal experiences nor those of other persons nor relate any special information. A juror may have special knowledge of matters such as business, technical or professional matters or he may have expert knowledge or opinions or he may know what happened in this or some other lawsuit. To tell the other jurors any of this information is a violation of these instructions.

The reporting juror thought that the offending juror had violated this instruction. With the attorneys for each side present, the trial court questioned the reporting juror in camera. The reporting juror told the trial court that when the jury was discussing the

---

[1]This juror is identified in the record by her name and juror number. To protect her identity, we will refer to her only as the "reporting juror."

[2]The record does not reflect which juror this was. We will refer to her as the "offending juror."

3

articles of clothing that were admitted in evidence, the offending juror stated that they "were common among the gang community and that she knew personally because she has family members in that particular gang" that Lemons was in.

According to the reporting juror, the offending juror also said, "I have family members that are in that gang, so . . . I am part of that community." The reporting juror explained that she did not take the offending juror's statements to mean that she herself was part of a gang but thought that "she was relating herself to that part of that community because she has family members" and "that maybe she's relating herself to having a little bit more empathy towards that part because she has family members that are in gangs and she . . . kind of lives in that world" and was "familiar with that world."

The reporting juror averred that the offending juror did not threaten her but that "her main point was that she is familiar with these actions, so basically [the trial court's instructions] were broken there." The reporting juror told the trial court that she felt she could go forward with her duties as a juror and that she was not threatened.

After the juror was released back to the jury room, Lemons argued that a mistrial was warranted "[b]ased on the fact that one of the jurors has broken one of the rules . . . and that they are basing their decision on evidence that's not been admitted in open court with the parties." The State objected to a mistrial and argued that the appropriate course of conduct would be to excuse the juror who had committed misconduct and replace her with the alternate. The trial court denied both requests and instead brought the whole jury out and admonished them to consider the Court's Charge as a whole

4

"for all instructions first" and to also "refer to the card for the purposes of deliberations as well." The trial court then reread the preliminary instructions on the yellow card to the jury members and told them to return to the jury room and continue their deliberations.

## A. Standard of Review

A mistrial is an extreme remedy that should be granted only if residual prejudice remains after less drastic alternatives have been explored. *Jenkins v. State*, 493 S.W.3d 583, 612 (Tex. Crim. App. 2016). Less drastic alternatives include instructing the jury to consider as evidence only the testimony and exhibits admitted through witnesses on the stand and questioning the jury about the extent of any prejudice if an instruction alone does not sufficiently cure the problem. *Id.* Whether an error requires a mistrial must be determined by the particular facts of the case. *Id.*

We review a trial court's denial of a mistrial for an abuse of discretion. *Id.* A trial court abuses its discretion only when no reasonable view of the record supports its ruling. *State v. Lerma*, 639 S.W.3d 63, 68 (Tex. Crim. App. 2021).

## B. Discussion

Lemons argues that the trial court abused its discretion in denying his motion for mistrial.[3] He contends that "the actions taken by the rogue juror in disregarding the trial

---

[3]The State argues that Lemons has forfeited this complaint. An appellant who moves for a mistrial without first requesting a less drastic alternative forfeits appellate review of that class of events that could have been cured by the lesser remedy. *Ocon v.*

court's rules by infecting the trial with evidence not derived from the witness stand but which pertained directly to facts of consequence in this trial implicates [Lemons]'s right to a fair trial." He further contends that "not only did the trial court fail to replace the rogue juror, but the court never even identified who the rogue juror was, imprinting the judicial stamp of approval for the rogue juror's utter disregard for the trial court's rules provided at the beginning of trial." We are not persuaded.

The trial court stated on the record, "I do not believe that the jury has been tainted because . . . we do live in a singular community, okay, Fort Worth, Tarrant County, Texas. We're going to have jurors from time to time that may have information and background about various places and people." The trial court reasoned that "bringing in individual jurors to question them would unnecessarily and unduly be burdensome, and it would bring attention to the one juror that would potentially leave that person out." The trial court found that because "none of the other jurors have said anything . . . , the best, cleanest and most appropriate way for both parties is simply to bring the jury in, tell them to continue with their deliberations, please refer to the Court's Charge[,] and please reconsider what the following is in terms of . . . reading

---

*State*, 284 S.W.3d 880, 886–87 (Tex. Crim. App. 2009). Thus, while the State is correct that "less drastic remedies were available to cure any prejudice that may have resulted from the juror's alleged misconduct," that means that our review "is limited to the question whether the trial court erred in not taking the most serious action of ending the trial." *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004). An appellant need not request a curative instruction to preserve error. *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. App.—Fort Worth 2005), *aff'd*, 189 S.W.3d 272 (Tex. Crim. App. 2006).

the entire card."

Considering that Lemons requested no alternative remedies, he must have been satisfied that the trial court aggressively utilized the remedy of the curative instruction. *See Ocon*, 284 S.W.3d at 887. "Curative instructions frequently serve as effective alternatives to the extreme remedy of a mistrial, and there is no indication that the . . . instructions subsequent to the [offending] juror's [alleged] misconduct failed to remedy the situation." *Id.*

An event that could have been prevented by timely objection or cured by instruction to the jury will not lead an appellate court to reverse a judgment on appeal by the party who did not request these lesser remedies in the trial court. *Young*, 137 S.W.3d at 70. We conclude that the trial court properly employed less drastic measures that sufficiently cured the problem created by the offending juror's alleged misconduct. *See Jenkins*, 493 S.W.3d at 613. A mistrial would have been appropriate only had Lemons proved an error incurable by less drastic remedies. *Ocon*, 284 S.W.3d at 888. Here, there is no evidence that residual prejudice remained after the trial court repeated its instructions to the jury.[4] *See id.*

---

[4]We question what prejudice—if any—Lemons suffered as a result of the offending juror's alleged misconduct. The court of criminal appeals has repeatedly said that "[a] juror's statement during the jury's deliberation, to require reversal, should be such that reason and common sense can see it was harmful to the accused." *Turner v. State*, 331 S.W.2d 319, 320 (1960) (quoting *Collier v. State*, 297 S.W.2d 160, 162 (1956)). Here, it is difficult to see how the offending juror's statements relating her own experiences and familiarity with gang culture were harmful to Lemons, especially

The trial court did not abuse its discretion in denying Lemons's motion for mistrial. *See Jenkins*, 493 S.W.3d at 613. We overrule Lemons's second point.

## II. *Allen* **Charge**

In his first point, Lemons argues that the trial court erred when it issued an "unduly coercive" *Allen* charge that constituted a comment on the weight of the evidence. Less than an hour after the trial court sent the jury back to continue their deliberations, the jury sent out a note saying that they were "hung" and that further deliberation would not produce unanimity.[5] Both the State and Lemons requested an *Allen* charge,[6] but Lemons objected to the charge that the trial court planned to give the jury. Specifically, Lemons objected to the following language in the trial court's proposed *Allen* charge:

> You should listen with a disposition to being convinced to the arguments of other jurors if a large number of jurors consider whether they are basing their opinion on speculation or guesswork and not on the evidence in the case.
>
> Those in the minority should keep in mind the impression the evidence has made on a majority of the jurors, who are of equal honesty

because the jury acquitted him on both of the charges that required proof of a "combination" or his membership in a criminal street gang.

[5]The Court read the jury note into the record as follows: "We believe we are a hung jury, and further deliberation will not produce consensus -- or – it's scratched, but I think it says unanimously, but it's scratched through of opinion [sic]." None of the jury notes were included in the clerk's record, and Lemons appears not to have filed a designation asking that they be included.

[6]*See Allen v. United States*, 164 U.S. 492, 501, 17 S. Ct. 154, 157 (1896).

8

and intellect as the minority.

The trial court overruled Lemons's objection, brought the jury back out, read the full *Allen* charge to the jurors, and allowed them to take a break for the evening. The next morning, before the jury resumed its deliberations, the bailiff notified the trial court that another juror[7] had sent out a note, apparently complaining about the same offending juror.[8] The second reporting juror's note stated that one of the jurors was not deliberating in "good faith," that she was "openly stating that she has family members [who] are a part of gangs," that she had "contradicted herself on commenting on the evidence," that her judgment was "clouded by this extreme bias," and that he personally felt she should step down. The State again suggested that the juror who was committing possible misconduct be replaced with the alternate, and Lemons again moved for a mistrial.

Rejecting both proposed remedies, the trial court allowed the jury to continue to deliberate. The jury continued to deliberate through the morning, taking one break in the morning and then a one-hour lunch break after noon. Shortly after resuming its

---

[7]The trial court identified this juror by name in the record. We will refer to him as "the second reporting juror."

[8]Because none of the other jurors was identified on the record as the offending juror, we cannot be sure that both reporting jurors were referring to the same juror. But contextually, the record suggests that the alleged misconduct was committed by the same offending juror.

deliberations following the lunch break,[9] the jury notified the trial court that it had reached a verdict on all counts.

Lemons contends that "the *Allen* charge here was specifically directed at the juror or jurors who were in the minority." But as the trial court pointed out, its use of the word "if" made that part of the *Allen* charge conditional. And the record does not indicate the jury's vote count, much less that the trial court knew how the jurors were split. For all we know (and as far as the trial court knew at the time), the jury could have been evenly divided, with six jurors voting guilty and the other six voting not guilty, on each count at the time the trial court gave them the *Allen* charge. In other words, there might not have been a "majority" and a "minority" to address, thereby mooting that part of the charge.

Lemons also contends that the *Allen* charge issued to the jurors commented on the evidence by referencing "the effect (or weight) of the evidence upon the minds of the jurors" in violation of Article 38.05 of the Code of Criminal Procedure. But Article 38.05 forbids the trial judge from discussing or commenting upon the weight of the evidence or its bearing in the case when "ruling upon the admissibility of evidence." Tex. Code Crim. Proc. Ann. art. 38.05.[10] An *Allen* charge is not a ruling upon the

---

[9] The record reflects that the jury deliberated from 1:21 to 1:45 p.m. following the lunch recess.

[10] Article 38.05 also provides that the trial judge shall not, at any stage of the proceeding before the return of the verdict, "make any remark calculated to convey to

admissibility of evidence. Rather, it is a supplemental jury instruction that "reminds the jury that if it is unable to reach a verdict, a mistrial will result, the case will still be pending, and there is no guarantee that a second jury would find the issue any easier to resolve." *Barnett v. State*, 189 S.W.3d 272, 277 n.13 (Tex. Crim. App. 2006).

And, as the State now points out, we have held that *Allen* charges containing identical or nearly identical language to what Lemons objected to in this case were proper and not coercive. *See Miller v. State*, No. 02-17-00330-CR, 2018 WL 2727952, at *1, *2 (Tex. App.—Fort Worth June 7, 2018, pet. ref'd) (mem. op., not designated for publication); *Johnson v. State*, No. 02-11-00516-CR, 2013 WL 43990, at *1–3 (Tex. App.—Fort Worth Jan. 4, 2013, no pet.) (mem. op., not designated for publication); *Ball v. State*, No. 2-06-268-CR, 2007 WL 2744883, at *3–4 (Tex. App.—Fort Worth Sept. 17, 2007, pet. ref'd) (mem. op. on PDR, not designated for publication); *West v. State*, 121 S.W.3d 95, 108–09 (Tex. App.—Fort Worth 2003, pet. ref'd).[11] "The charge did not tell the jury that one side or the other possessed superior judgment; rather, it specifically stated that both the majority and minority possessed equal intellect and

___

the jury his opinion of the case." Tex. Code Crim. Proc. Ann. art. 38.05. Nothing in the record before us suggests that the *Allen* charge was calculated to convey to the jury the trial court's opinion of the case.

[11]In *West,* we noted that the trial court knew that the jury was split 11 to 1. 121 S.W.3d at 108. We still said the *Allen* charge "d[id] not contain the type of language courts have held to be problematic and coercive," and "we s[aw] no language that show[ed] jury coercion likely occurred." *Id.* at 109.

11

honesty." *Ball*, 2007 WL 2744883, at *3–4.

Just like in these other cases, the trial court carefully concluded the charge by instructing the jurors that they should try to arrive at a verdict acceptable to all only if that was possible "without doing violence to your conscience." *See Miller*, 2018 WL 2727952, at *1; *Johnson*, 2013 WL 43990, at *2; *Ball*, 2007 WL 2744883, at *1; *West*, 121 S.W.3d at 108. In its context and under all circumstances, we hold that the trial court's *Allen* charge, which contained language instructing the minority to keep in mind the majority's views, was not unduly coercive because it did not pressure jurors into reaching a particular verdict or improperly convey the trial court's opinion of the case. *See Johnson*, 2013 WL 43990, at *3.

We further hold that the *Allen* charge was not a comment on the evidentiary weight. The language about which Lemons has complained "was not a comment on the evidence of this particular case; rather, it was a generic comment" regarding jury deliberations that has been approved for decades. *See Ball*, 2007 WL 2744883, at *3. In *Allen*, the Supreme Court stated

> The very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves. It certainly cannot be the law that each juror should not listen with deference to the arguments, and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself. It cannot be that each juror should go to the jury room with a blind determination that the verdict shall represent his opinion of the case at that moment, or that he should close his ears to the arguments of men who are equally honest and intelligent as himself.

164 U.S. at 501–02, 17 S. Ct. at 157. We overrule Lemons's first point.

### III.   Missing Judgments

In his third point, Lemons complains that the record fails to contain judgments of acquittal reflecting the jury's "not guilty" verdicts for counts one and three. The State contends that because the record contains no judgment of guilt or other appealable order regarding counts one and three, we lack jurisdiction to address this point. We agree with the State.

"The standard for determining jurisdiction is . . . whether the appeal is authorized by law." *Abbott v. State*, 271 S.W.3d 694, 696–97 (Tex. Crim. App. 2008). Texas law authorizes a defendant in a criminal case to appeal "a judgment of guilt or other appealable order." Tex. R. App. P. 25.2(a)(2); *see* Tex. Code Crim. Proc. Ann. art. 44.02; *see also Blanton v. State*, 369 S.W.3d 894, 902–03 (Tex. Crim. App. 2012) (explaining that "an appellant has the right to appeal in every case in which the trial court enters a judgment of guilt or an appealable order"). Additionally, a defendant's general right to appeal under Article 44.02 and its predecessors has always been limited to appeal from a "final judgment." *State v. Sellers*, 790 S.W.2d 316, 321 n.4 (Tex. Crim. App. 1990); *Ryan v. State*, 198 S.W. 582, 583 (1917). In this point, Lemons is not complaining of error in "a judgment of guilt or other appealable order"; rather, he is complaining about the *absence* of any judgments reflecting his acquittals. He has not moved this court to supplement the clerk's record with the missing judgments, nor does the record before us reflect that he moved the trial court to enter such judgments.

We thus determine that we lack jurisdiction to address Lemons's third point, and

we dismiss it for want of jurisdiction. *See Leach v. State*, 170 S.W.3d 669, 676 (Tex. App.—Fort Worth 2005, pet. ref'd); *Andrade v. State*, 963 S.W.2d 832, 833 (Tex. App.—Fort Worth 1998, no pet.).

## Conclusion

Having overruled Lemons's three points, we affirm the trial court's judgments.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  July 3, 2024

14